# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| IRONWOOD BUILDING II, LTD., and PRINCIPLE AUTO MANAGEMENT, LTD., § § § | |
| *Plaintiffs*, § | Civil Action No. SA-19-CV-00368-XR |
| v. § § | |
| AXIS SURPLUS INSURANCE COMPANY, § § § | |
| *Defendant*. § | |

## ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

On this date, the Court considered Defendant AXIS Surplus Insurance Company's ("Defendant") motion for partial summary judgment (docket no. 16), Plaintiff Ironwood Building II and Principle Auto Managements' (collectively "Plaintiffs") response (docket no. 20), and Defendant's reply (docket no. 22). The Court further considered Plaintiffs' motion for partial summary judgment (docket no. 21), Defendant's response (docket no. 23), and Plaintiffs' reply (docket no. 26). After careful consideration, both motions (docket nos. 16 and 21) are DENIED.

## BACKGROUND

Plaintiffs own and occupy an office building located at 153 Treeline Park Drive in San Antonio.[1] In 2016, a hailstorm damaged the building's standing seam metal roof. Docket no. 20-1 at 1. At the time, Plaintiffs were insured by Liberty Mutual Fire Insurance Company ("Liberty") under Policy Number YU2-Z91-464332-015 ("Liberty Policy"). Docket no. 17-2 at 16. Plaintiffs paid a premium to obtain replacement cost coverage. *Id.* The policy provided that

---

[1] Ironwood Building II owns the office building, and its affiliated entity, Principle Auto Management, occupies it as a tenant.

Liberty would pay the full replacement cost[2] only when the lost or damaged property was actually repaired or replaced; if such repairs were not made within two years of the physical loss, Liberty would only pay the actual cash value amount. Docket no. 17-2 at 39. The Liberty Policy defined "actual cash value" as "replacement cost less deduction for depreciation." *Id.* at 50. Liberty paid Plaintiffs $188,275 for the roof damage. *Id.* at 7. This number represented the actual cash value of the roof: replacement cost of the roof ($223,275) minus deduction for depreciation ($35,000). *Id.* at 7, 12. Plaintiffs did not repair the roof, as the building continued to function without any apparent water leakage. Docket no. 20-1 at 1.

Months later, Plaintiffs obtained a new insurance policy from Defendant. Docket no. 17-1 at 2. This policy, Policy No. ECF795473-16 (the "AXIS Policy"), provided coverage for the office building from July 1, 2016 to July 1, 2017. Docket no. 17-1 at 2, 5. Plaintiffs paid a $66,892 premium for replacement cost coverage for the building. *Id.* at 5, 18. The policy states that replacement cost replaces actual cash value and does not deduct for depreciation. *Id.* at 33. The policy limits replacement cost to the lesser of: (1) the policy limit, (2) the "cost to replace the lost or damaged property with other property of comparable material and quality and used for the same purpose," or (3) the amount actually spent repairing or replacing the property. *Id.*

On February 19, 2017—while Plaintiffs' building was insured by the AXIS Policy—a tornado severely damaged Plaintiffs' roof, which immediately began to leak, causing extensive interior damage. Docket no. 20-1 at 2. Plaintiffs submitted a claim, identified as claim number ATL 123686 (the "AXIS Claim"). Docket no. 17-1 at 2. Defendant assigned Cunningham Lindsey as the independent adjuster to investigate the claim, and during that investigation,

---

[2] Replacement cost is defined in the Liberty Policy as the "cost to replace the covered property…[w]ith new materials of like kind and quality and used for the same purpose[,] and [a]t the location where the loss happened." Docket no. 17-2 at 56. Couch describes such replacement cost insurance as "designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property." 12A COUCH ON INS. § 176:56.

2

Defendant learned about Plaintiffs' prior claim with Liberty from the 2016 hailstorm. *Id.* at 2–3. Defendant determined the total replacement cost of the damaged property to be $470,957.64. *Id.* at 3. Defendant tendered three payments totalling $232,682.64. This amount tendered is based on the roof's replacement cost ($470,957.64), minus the undisputed wind deductible of $50,000, and minus Liberty's previous payment ($188,275). *Id.* Dispute as to that $188,275 forms the basis of the present cross motions for partial summary judgment.

## DISCUSSION

### I. Standard of Review

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the

3

moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).[3] The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the non-moving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.     Analysis

Plaintiffs bring suit on four causes of action,[4] but both parties' motions for partial summary judgment address one narrow issue: whether Defendant can be held liable for breach of contract for deducting $188,275 from the total estimated replacement cost. Defendant claims—without pointing to any supporting evidence—that a "significant portion of the damage included in AXIS's [replacement cost] estimate was for damage to portions of the property that Liberty had previously paid for, but had not been replaced…." Docket no. 17 at 3. Because Plaintiffs should not enjoy an alleged double recovery, Defendant asks the Court to find that its deduction of the $188,275 for the prior Liberty payment does not constitute a breach of contract. Docket no. 17 at 3. Plaintiffs, in turn, argue that they paid a premium for replacement cost coverage and, accordingly, Defendant must pay the cost of that replacement pursuant to the plain meaning of the contract. Docket no. 21 at 5. Indeed, Plaintiffs argue, Defendant itself would reap a windfall if it were able to charge Plaintiffs a premium for replacement cost coverage and then offer to deduct a significant amount of the replacement cost. *Id.* at 8.

---

[3] The presence of cross motions does not alter this approach: the Court will "review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

[4] These include breach of contract, breach of the duty of good faith and fair dealing, and separate causes of action for violations of the Texas Insurance Code (Chapters 541, Subchapter B and 542, Subchapter B). Docket no. 4-2 at 4–5.

Under Texas law, to prove a breach of contract, a plaintiff must show (1) the existence of a valid contract, (2) the plaintiff's performance or tender of performance, (3) the defendant's breach of contract, and (4) the plaintiff's damages as a result of the breach. *Brooks v. Excellence Mortg. Ltd.*, 486 S.W.3d 29, 36 (Tex.App.—San Antonio 2015, pet. denied).[5] Thus, in an insurance policy context, a plaintiff must prove the existence of a valid insurance policy covering the claim and entitlement to money damages on that claim. *Davis v. Nat'l Lloyds Ins. Co.*, 484 S.W.3d 459, 468 (Tex.App.—Houston [1st Dist.] 2015, pet. denied).

Insurance policies, under Texas law, are subject to the same rules of interpretation and construction as contracts more generally. *Progressive Cty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). This means a court's "primary concern in construing a written contract 'is to ascertain the true intent of the parties as expressed in the instrument.'" *Fed. Ins. Co. v. Northfield Ins. Co.*, 837 F.3d 548, 552 (5th Cir. 2016) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam)). Accordingly, a court "evaluates the contract based on its plain meaning, determining what the words of the contract say the parties agreed to do." *Tetra Techs., Inc. v. Cont'l Ins. Co.*, 814 F.3d 733, 746 (5th Cir. 2016) (internal quotation marks and citations omitted). Any "[a]mbiguous language—in particular, exclusionary language—must be construed 'strictly against the insurer and liberally in favor of the insured.'" *Id.* at 747 (quoting *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 563–64 (5th Cir. 2010)).

In this case, the parties spend much time debating whether replacement cost contracts permit the insured to "reap a windfall" and whether the unrepaired damage to the building from

---

[5] Because this matter is before the Court pursuant to the Court's diversity jurisdiction, the Court applies substantive Texas law. *See Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

2016 counts as depreciation (in distinguishing actual cash value and replacement cost).[6] What these disputes largely miss, however, is that the record before the Court presents a strikingly simple, and indeed genuine, dispute as to a material fact: which storm caused which damage, and without an answer to that question, is summary judgment appropriate? In short, the record does not reveal with any precision which storm caused which damage, and without that knowledge, summary judgment is inappropriate.

An insured may still recover even if he or she suffers damage from both a covered and non-covered peril. *Hamilton Properties v. Am. Ins. Co.*, 3:12-CV-5046-B, 2014 WL 3055801, at *4 (N.D. Tex. July 7, 2014), *aff'd* 643 Fed. App'x 437 (5th Cir. 2016). "Under the doctrine of concurrent causes, when covered and non-covered perils combine to create a loss, the insured is entitled to recover that portion of the damage caused solely by the covered peril." *Texas Windstorm Ins. Assoc. v. Dickinson Ind. Sch. Dist.*, 561 S.W.3d 264, 273 (Tex.App.—Houston [14th Dist.] 2018, pet. filed) (citing *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex.

---

[6] The Court does note that Plaintiffs persuasively distinguish the cases on which Defendant relies to justify its deduction. *See* docket no. 20 at 8–13. The cases Defendant cites in which the insurer was able to deduct a prior, unrepaired amount were cases that involved (1) the same insurance carrier on both the first and subsequent losses and, most importantly, (2) involved claims for *actual cash value* rather than replacement cost. *See State Farm Fire & Cas. Co. v. Griffin*, 888 S.W.2d 150 (Tex.App.—Houston [1st Dist.] 1994, no writ); *Commercial Union Ins. Co. of Am. v. Stanmike Inv. Co.*, 475 S.W.2d 295 (Tex. Civ. App.—Waco 1971, writ ref'd n.r.e.). The *Griffin* court, in particular, makes it clear that the defendant was permitted to deduct the amount from the first storm *because* the contractual measure of damages for both losses was the same: actual cash value. *See Griffin*, 888 S.W.2d at 157.

Because the claim for the second loss in each was actual cash value, the insurer properly deducted the amount by which the property had depreciated and, as Plaintiffs argue, the actual cash value paid in the *first* loss indicates the amount of loss (or depreciation) to the property. In other words, in this case, the value to Plaintiffs' property decreased by $188,275 in 2016. Liberty's insurance payment left Plaintiffs breaking even financially but with a property depreciated to the tune of $188,27. What Plaintiffs seek now is the total cost of replacement for which they contracted. Presumably, Defendant knew or should have known of damage to the property when it contracted with Plaintiffs to provide replacement cost coverage. Further, nothing in the contract suggests that Defendant can deduct for prior unrepaired insurance proceeds, and in any event, the plain language of the contract makes clear that Defendant agreed to pay the cost of replacing the property in the event of a loss. *Tetra Tech*, 814 F.3d at 746 (nothing that a court "evaluates the contract based on its plain meaning, determining what the words of the contract say the parties agreed to do").

1971); *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 198 (Tex.App.—Houston [14th Dist.] 2003, pet. denied)). The insured must produce evidence that will afford a reasonable basis for estimating the amount of damages or proportionate part of damage caused by a risk covered by the insurance policy. *Dallas Nat'l Ins. Co. v. Calitex Corp.*, 458 S.W.3d 210, 222–23 (Tex.App.—Dallas 2015, no pet.); *see also McKillip*, 469 S.W.2d at 163. "Where a loss, however, is caused by a covered peril and an excluded peril that are *independent* causes of the loss, the insurer is liable." *Seahawk Liquidating Trust v. Certain Underwriters at Lloyds London*, 810 F.3d 986, 995 (5th Cir. 2016) (emphasis added) (citing *Guar. Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.3d 133, 137 (5th Cir. 1990)); *see also Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 215 (Tex.App.—Houston [1st Dist.] 2003, pet. denied). The concurrent-cause doctrine, therefore, "applies to limit recovery *only* when the loss is caused by two concurrent causes instead of two independent causes." *Seahawk*, 810 F.3d at 995 (emphasis added).

Here, there is a genuine dispute as to whether there are two concurrent or independent causes. Defendant's position is that a covered (2017 tornado) and uncovered (2016 hailstorm) peril combined to create a loss and, as such, Plaintiff as the insured must segregate those costs to afford a reasonable basis for estimating the proportion of damage caused by the 2017 tornado. *Calitex Corp.*, 458 S.W.3d at 222–23; docket no. 17 at 9. Defendant automatically deducted $188,275 while admitting that a "significant portion" (implying not *all*) of the 2017 damage estimate was for damages from 2016. *Id.* at 3. But the concurrent-cause doctrine limits recovery "only when the loss is caused by two concurrent causes instead of two independent causes" *Seahawk*, 810 F.3d at 995, and here, the Court has no basis to conclude that precisely $188,275 worth of damage was concurrently caused by both the 2016 and 2017 storms such that Plaintiffs'

7

failure to segregate the costs allows Defendant to deduct that amount. Indeed, Plaintiffs have raised a fact issue as to whether the causes were independent by proffering evidence that the roof did not leak after the 2016 hailstorm but *did* leak after the 2017 tornado, to the point of requiring replacement. Docket no. 20-1 at 1. This may ultimately show that replacing the roof was necessary as a result of an entirely independent cause, the 2017 tornado. *See, e.g. USAA Texas Lloyd's Co. v. Griffith*, No. 13-17-337-CV, 2019 WL 2611015, at *4–5 (Tex.App.—Corpus Christi June 26, 2019, no pet.) (holding evidence of roof's good condition before storm meant a reasonable jury could find the concurrent-cause doctrine inapplicable in rejecting insurer's argument that the insured must segregate damages); *see also Hahn v. United Fire and Cas. Co.*, No. 6:15-CV-218-RP, 2017 WL 1289024, at *8 (W.D. Tex. Apr. 6, 2017) (denying insurer's motion for summary judgment as the insured submitted evidence that the subject roof was in good condition before the storm). Did the 2017 damage subsume any 2016 damage such that the damage would have occurred even without the 2016 damage, meaning the two are independent? Defendant says it does not; Plaintiffs say it does, and the record at this time does not resolve that dispute. Accordingly, Defendant's motion (docket no. 16) is DENIED.

By the same token, it may indeed ultimately be that these are concurrent causes in which case, to recover, Plaintiffs would have to segregate the damages in order to recover. *Calitex Corp.*, 458 S.W.3d at 222–23. Plaintiffs have not done so. They do note that, if the Court determines they need to, they will conduct further depositions of the roofing contractor to provide evidence that "all of the expenses Ironwood incurred in replacing the roof was necessary as a result of the tornado," (docket no. 20 at 19) but given the record now before the Court, the Court cannot make a determination as to what, if any, portion of the $188,275 was a concurrent or independent cause. If Plaintiffs cannot ultimately show that the 2017 damage was independent

of the 2016 damage, Plaintiffs would not be entitled to recover under the concurrent-cause doctrine, and Defendant might thus be entitled to deduct any concurrently-caused damage from its payment. *Nat'l Union Fire Ins. of Pittsburgh v. Puget Plastics Corp.*, 735 F. Supp. 2d 650, 669 (S.D. Tex. 2010) ("Failure to provide evidence upon which a jury or court can allocate damages between those that resulted from covered perils and those that did not is fatal to an insured party's claim.") (citing *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 304 (Tex.App.—San Antonio 1999, pet. denied). Accordingly, Plaintiffs' motion is also DENIED.

## CONCLUSION

In sum, if the 2016 hailstorm and 2017 tornado combined to cause the damage such that they are concurrent causes, it is Plaintiffs' burden to segregate those damages. They have not done so. But if the damage resulting from the 2017 tornado would have happened regardless of the 2016 hailstorm, such that the two are independent, the concurrent-cause doctrine would not bar Plaintiffs from recovering the full contractual amount: the replacement cost. The record before the Court provides a genuine issue of material fact as to whether what damage, if any, was concurrent and what was independent. Accordingly, Defendant's motion (docket no. 16) and Plaintiffs' motion (docket no. 21) are both DENIED.

It is so ORDERED.

SIGNED this 13th day of March, 2020.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE